IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL ABRAMS,                              *

    Plaintiff,                              *

      v.                              *        Civil Action No. RDB 04-530

BALTIMORE COUNTY, MD., *et al.*              *

                                           *

    Defendants                              *

*    *    *    *    *    *    *    *    *    *    *    *    *

<u>MEMORANDUM OPINION</u>

This action arises out of a complaint filed by Michael Abrams ("Plaintiff" or "Abrams") against Baltimore County, Officer Robin Buerkel, Corporal David Rose, Officer Kenneth Smith, Sergeant Darlene Peters, John Does 3-4 (described as Baltimore County police officers), John Doe 5 (described as "Superintendent of Police"), John Doe 6 (described as Baltimore County police officer), Max Moes 1-10 (described as "Watch Commanders"), Max Moes 11-20 (described as "Supervisors") (collectively, "Defendants").[1]  Pending before this Court is Defendants' Motion for Summary Judgment.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331.[2]  The parties' submissions have been reviewed.  No hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2004).  For the reasons stated below, Defendants' Motion for Summary Judgment is GRANTED.

---

      [1]     This Court dismissed Defendant Baltimore County Police Department from this action.  *See* Order, 03/05/04, p. 2.

      [2]     Plaintiff contends that this Court also has jurisdiction pursuant to 28 U.S.C. §§ 1332 (diversity of citizenship), 1343 (civil rights and elective franchise), & 1364 (actions against insurers of members of diplomatic missions and their families).  (*See* Compl. ¶ 2.)

BACKGROUND

This Court reviews the facts of this case in the light most favorable to the party opposing

the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When addressing allegations of excessive use of force by police officers, the Court must

ultimately address the issue of qualified immunity.  When determining whether defendants are

entitled to qualified immunity, a court must consider the facts "in the light most favorable to the

party asserting the injury."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

On the afternoon of March 4, 2001, a witness called 911 to report that a man was kicking

a woman at an intersection in Baltimore County, Maryland.  Officer Kenneth Smith was

immediately dispatched to respond to this assault in progress.  Officer Smith arrived on the scene

to find a woman lying on the sidewalk and a black Corvette driving away.  Smith identified the

license plate of the black Corvette—Virginia tag 4VX6649—as the same license plate reported

by the witness who called 911.  Officer Smith broadcast a description of the black Corvette with

Virginia tags 4VX6649 over police radio, and then turned his attention to the woman lying on

the ground.

Corporal David Rose and Officer Robin Buerkel,[3] each working in separate patrol cars,

heard Officer Smith's description of the black Corvette on their radios.  Rose and Buerkel

observed the Corvette traveling southbound on Northpoint Boulevard at a high rate of speed.  At

the intersection of Northpoint Boulevard and St. Monica Drive, they saw the driver of the

Corvette disregard a traffic light and hit a white Jeep with two people inside.  "When the

---

[3]      Officer Robin Buerkel recently changed her last name to Rose.  To remain
consistent with papers filed in this matter, this Opinion uses "Officer Buerkel" or "Buerkel" to
refer to Ms. Rose.

Corvette collided with the Jeep, both vehicles went airborne and spun around and landed facing in opposite directions." (Buerkel Decl. ¶ 11.)  Officer Buerkel "thought the accident may have resulted in a fatality." (*Id*.)  Rose and Buerkel then saw the suspect—later identified as Plaintiff Abrams—exit the Corvette and flee on foot.  Officer Buerkel immediately gave chase on foot. Corporal Rose gave chase first in his vehicle and then on foot.

At this point, two versions of the facts emerge.  According to Rose and Buerkel, the suspect ran to the rear of a house and was grabbed by Corporal Rose as they both went over a fence.  (Rose Decl. ¶ 9; Buerkel Decl. ¶ 14.)  The suspect swung his fist and the blow glanced off Rose's arm into the side of his face.  (Rose Decl. ¶ 10; Buerkel Decl. ¶ 15.)  Corporal Rose then struck the suspect "two or three times" with his fist "probably to the face or head area." (Rose Dep. pp. 23-24.)  Rose and the suspect both went to the ground where the suspect was "fighting back from the bottom, grabbing [Rose's] throat and [] face." (Rose Dep. p. 24.; Rose Decl. ¶ 11; Buerkel Decl. ¶ 16.)  At this point, "[i]t turned into a wrestling match. . . ." (Rose Dep. p. 27.) Rose was able to get one cuff on the suspect, who continued to struggle and refused to be handcuffed. (Rose Decl. ¶ 12; Buerkel Decl. ¶ 17.)  Finally, Officer Buerkel arrived on the scene and assisted in cuffing, restraining the suspect's leg as he continued to kick, subduing, and eventually arresting the suspect.  (Rose Decl. ¶¶ 13-15: *see also* Buerkel Decl. ¶¶ 17-18.)

In reviewing all facts in the light most favorable to the plaintiff Abrams, it is undisputed that he was actively fleeing police officers after apparent criminal activity.  According to Abrams, he was hit in the back "with an object, a very hard object" as he ran away from the Corvette.  (Abrams Dep. p. 45.)  Once the police officers caught up with him, Abrams alleges that Corporal Rose sprayed something in his eyes and then, together with Officer Buerkel,

3

pounded Abrams in the upper head and face.  (*Id*. at 50-51.)  Abrams contends that Corporal

Rose said "this is what you get for running from the police" and, despite "beg[ging] them to

stop," Abrams asserts that Rose and Buerkel "continued on hitting me over and over and over

again, until I was out of consciousness."  (*Id*.)  The next thing Abrams remembers is waking up

in shock trauma "surrounded by the doctor and several doctors and nurses."  (*Id*. at 52.)  Abrams

contends that "[a]t no time did I attempt to resist arrest, offer violence to anyone, provoke

anyone, threaten anyone, pose a danger to anyone, avoid apprehension, swing my fist at or strike

Rose, kick anyone, struggle or refuse to be handcuffed."  (Abrams Affidavit ¶ 25.)

   Abrams' hospital records indicate that he was diagnosed with:

> OPEN WOUND OF FOREHEAD
> OPEN WOUND OF LIP
> HEAD INJURY, UNSPECIFIED
> CONTUSION, FACE/SCALP/NCK
> FALL NEC NOS
> ACCIDENT IN PLACE NEC
> OTHER ALT OF CONSCIOUSNE [sic]

(Pls' Opp'n Ex. 8.)  Abrams was treated and released from the hospital on the same day, March

4, 2001.  (Abrams Dep. p. 52.)  It is undisputed that the above injuries did not even require his

overnight hospitalization.  His condition on discharge was described as "good."  (Pls' Opp'n Ex.

8.)

   On November 20, 2002, Abrams pled guilty to second degree assault of Alice Mendoza.

(Abrams Aff. ¶ 62.)  He was sentenced to ten years of imprisonment, with "all but two years"

suspended.  (Abrams Aff. ¶ 62.)  Abrams is currently incarcerated in the State of Virginia on

another offense.  (*See* Abrams Aff. ¶¶ 59-63.)

   On February 24, 2004, Abrams filed a complaint against Defendants in this Court.  On

June 21, 2004, Defendants filed their Motion to Dismiss or, in the Alternative, for Summary

Judgment.  On September 13, 2004, this Court denied Defendants' initial motion and granted

Abrams' Motion for Appointment of Counsel.[4]  The Court allowed an extended period of

discovery for the Plaintiff in this matter.  On June 23, 2005, Defendants filed the pending Motion

for Summary Judgment.

STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil

Procedure when there is no genuine issue as to any material fact, and the moving party is plainly

entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242 (1986), the Supreme Court explained that, in considering a motion for summary judgment,

"the judge's function is not himself to weigh the evidence and determine the truth of the matter

but to determine whether there is a genuine issue for trial." *Id*. at 249.  A dispute about a

material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party." *Id*. at 248.  Thus, "the judge must ask himself not whether he thinks the

evidence unmistakably favors one side or the other but whether a fair-minded jury could return a

verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.  In undertaking this

inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light

most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio

Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655

(1962); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir.2005).

---

[4]     On October 12, 2004, the Court appointed Neil J. Bixler, Esq., Summerfield, Willen, Silvergberg, and Limsky, PA, as counsel in this matter.

However, the opponent must bring forth evidence upon which a reasonable fact finder could rely, *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment.  *Anderson*, 477 U.S. at 252.

DISCUSSION

**I.      Plaintiff's Claims.**

Abrams' complaint asserts a dizzying number of claims, the vast majority of which have been ignored throughout this litigation.  Although the nature of Abrams' claims is frequently difficult if not impossible to discern, the following chart attempts to summarize the causes of action for which Abrams requests approximately $19 to $56 million in damages:

| Count | Claims |
|-------|--------|
| I | Federal claims against Corporal Rose and Officer Buerkel alleging the use of excessive force in Plaintiff's arrest, including claims of: (a) excessive force and unreasonable seizure in violation of the 4th, 5th, and 14th Amendments, (b) deprivation of procedural and substantive due process, (c) deprivation of equal protection, and (e) impeding the due course of justice. |
| II | State claims against Corporal Rose and Officer Buerkel alleging the use of excessive force in Plaintiff's arrest, including claims of: (a) intentional infliction of emotional distress, (b) battery, (c) abuse of process, and (d) violations of Article 24 of the Maryland Declaration of Rights. |
| III | Federal claims under 42 U.S.C. §§ 1981 & 1983 against Officer Buerkel and John Doe 3 alleging race discrimination in connection with Plaintiff's detention and interrogation, including claims of: (a) race discrimination in violation of the 4th, 5th, and 14th Amendments, (b) unreasonable seizure, punishment and pains, (c) violations of substantive and procedural due process, and (d) impeding the due course of justice. |
| IV | State claims against Officer Buerkel and John Doe 3 alleging race discrimination in connection with Plaintiff's detention and interrogation, including claims of: (a) intentional infliction of emotional distress, and (b) violations of Article 24 of the Maryland Declaration of Rights. |
| V | Federal claims under 42 U.S.C. §§ 1981 & 1983 against Officer Smith and Sergeant Peters for arrest and prosecution without probable cause under the 4th Amendment. |

| VI | State claims against Officer Smith and Sergeant Peters for arrest and prosecution without probable cause, including claims of: (a) false imprisonment, (b) malicious prosecution, (c) intentional infliction of emotional distress, (d) abuse of process, (e) gross negligence, and (f) violations of Article 24 of the Maryland Declaration of Rights. |
|---|---|
| VII | Federal claims under 42 U.S.C. §§ 1981, 1983 & 1985 against Officer Buerkel and John Doe 3 in connection with retaliatory actions taken against Plaintiff, including claims of: (a) violations of privileges and immunities under the 1st, 4th, 5th, 6th, 8th, and 14th Amendments, (b) violations of due process, and (c) race discrimination. |
| VIII | State claims against Officer Buerkel and John Doe 3 in connection with retaliatory actions taken against Plaintiff, including claims of: (a) civil conspiracy, (b) intentional infliction of emotional distress, (c) abuse of process, (d) malicious prosecution, (e) false imprisonment, (f) false arrest, and (g) violations of Article 24 of the Maryland Declaration of Rights. |
| IX | State claims against Sergeant Peters, Max Moes 1-20, John Does 5-6, the Baltimore County Police Department, and Baltimore County relating to respondeat superior. |

## II.      Defendants' Motion for Summary Judgment.

### A.      Plaintiff's Federal Claims of Excessive Force (Count I).

Abrams asserts federal claims under 42 U.S.C. §§ 1983 and 1985 by alleging that

Corporal David Rose and Officer Robin Buerkel violated his rights under the Fourth, Fifth, and

Fourteenth Amendments to the United States Constitution by using excessive force during

Abrams' arrest.  For the reasons stated below, Officer Buerkel and Corporal Rose are entitled to

qualified immunity with respect to these claims.[5]

Determining whether qualified immunity applies generally involves a two-step analysis.

---

[5]      This Court analyzes each of Abrams' federal claims of excessive force under the Fourth Amendment.  *See*, *e.g.*, *Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding "that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest . . . should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach.") (emphasis in original); *Pittman v. Nelms*, 87 F.3d 116, 120 n. 3  (4th Cir. 1996) (limiting constitutional inquiry to the Fourth Amendment despite fact that plaintiff "grounded his claim on multiple provisions of the Constitution.").  (*See also* Pl's Opp'n pp. 2-10 (analyzing each of Abrams' federal claims of excessive force in Count I under the Fourth Amendment).)

First, the court must decide "'whether a constitutional right would have been violated on the

facts alleged.'" *Wilson v. Flynn*, 429 F.3d 465, 467 (4th Cir. 2005) (quoting *Saucier v. Katz*, 533

U.S. 194, 200 (2001)).  If the court determines that no constitutional right would have been

violated on the facts alleged, "that ends the matter, and the offic[er] is entitled to immunity."

*Saucier*, 533 U.S. at 200.  If the court determines that a constitutional right would have been

violated, the court proceeds to the second step and must determine if "that right was clearly

established at the time of the alleged violation."  *Wilson*, 429 F.3d at 467 (citations omitted).

In cases of excessive force arising out of an arrest, the appropriate framework for

performing the first step of a qualified immunity analysis is provided by "the Fourth

Amendment's 'objective reasonableness standard."  *Graham v. Connor*, 490 U.S. 386, 388

(1989).  "As in other Fourth Amendment contexts . . . the 'reasonableness' inquiry in an

excessive force case is an objective one: the question is whether the officer['s] actions are

'objectively reasonable' in light of the facts and circumstances confronting [him], without regard

to [his] underlying intent or motivation."  *Id*. at 397.  "This standard mandates 'a careful

balancing' of Fourth Amendment rights 'against the countervailing governmental interests at

stake.'" *Wilson*, 429 F.3d at 467 (quoting *Graham*, 490 U.S. at 388).

Assessing the governmental interests requires considering: "the severity of the crime at

issue, whether the suspect poses an immediate threat to the safety of officers or others, and

whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S.

at 388.  Evaluating the force used in connection with the arrest "must be judged from the

perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

*Id*.  Accordingly, "to allege violation of a constitutionally protected right, [Plaintiff] must allege

facts demonstrating that Officers [Buerkel and Rose] used force in an objectively unreasonable manner under the circumstances." *Wilson*, 429 F.3d at 467.

The *Graham* factors do not weigh in Plaintiff's favor. With respect to the first factor—severity of the crime—a reasonable officer could conclude that Abrams was involved in a number of serious and violent crimes. First, Abrams pled guilty to second degree assault of Ms. Mendoza.[6] Second, Abrams admits driving away from the intersection where Ms. Mendoza lay on the sidewalk as a marked patrol car with its emergency lights on arrived on the scene. (*See* Abrams Dep. p. 34; Smith Dep. p. 11.) Third, Abrams was traveling "65 to 70 miles per hour" as he approached the intersection where he collided with the white Jeep. (Abrams Dep. p. 38.) Although Abrams contends that he slammed on the brakes, there is no question that his collision with the Jeep involved extreme and potentially lethal force.[7] Finally, Abrams ran "as

---

[6]    Although Abrams contends that he never struck Ms. Mendoza, witnesses describe the assault in brutal terms. According to one witness: "I was driving by and I witnessed a guy and a girl. It looked like this guy was hitting on the woman. I kept going by and it looked like he had her by her face and hair and hitting her head into the tree. So, I stopped and made a U-turn and came back and put the car in park and got out and asked the guy what he was doing and he said it didn't have nothing to do with me. I got on my cell phone and dialed 911." (Hollis Dep. pp. 5-6.) Another witness reported that Abrams "was trying to drag her into his vehicle and she kept screaming and hollering please help me . . . I seen him kick her once or twice. When she was by the tree, he tried standing her up and he couldn't get her up, so when he let her go, he kicked her in the side and drug her . . .He had her by the ankles, because when he was dragging her across the grass, her shirt was going up to her neck and she was all nude up the top. Then he tried dragging her by her shoulders and he grabbed her underneath her arms trying to stand her up to get her in the car. When he did that, her pants came down from dragging her." (Steigerwald Dep. pp. 6-8.)

[7]    According to the Jeep's driver, "I looked over to my wife and she was screaming she was in pain, so I got out of the car—actually, before I got out of the car I checked to make sure my limbs were intact, because I was shaken up so much, I didn't know if lost a leg or arm. So, after I realized I was alive, I went over and checked on her and she was complaining of rib pain and was afraid she couldn't get up. She thought she was going to be paralyzed." (Coughlin Dep. p. 7; *see also* Buerkel Decl. ¶ 11 ("I thought the accident may have resulted in a fatality.").)

9

fast as [he] could" from the accident with the Jeep in the direction of a residential area. (Abrams

Dep. p. 44.) Accordingly, Abrams' behavior significantly differs from that of the plaintiff in

*Solis v. Prince George's County*, 153 F. Supp. 2d 793 (D. Md. 2001), upon which Abrams

heavily relies. In *Solis*, "[w]hether Plaintiff was suspected of *any* criminal activity . . . is the

center of a factual dispute between the competing versions of the parties." *Id*. at 801 (emphasis

added). In this case, however, while Abrams attempts to dispute his assault upon Ms. Mendoza,

it is clear as a matter of law that he pled guilty to this offense. Furthermore, after that assault, it

is undisputed that Abrams drove away from the scene of the assault, violated traffic laws,

violently collided with a Jeep, and ran away from the scene of that collision. There is no dispute

that Abrams was clearly in the act of flight from a series of apparent criminal acts.

The second *Graham* factor—whether the suspect poses an immediate threat—also does

not help Abrams. Abrams' argument that "at the time of effectuating the arrest, the plaintiff was

unarmed and outnumbered two-to-one by armed police officers" and "there is no evidence of the

'community at large' being at the scene of the actual arrest" is unconvincing. (*See* Pl's Opp'n p.

9). It is undisputed that a witness reported Abrams assaulting a woman on the street, that

Abrams drove away from the scene of the assault as a marked patrol car approached, that

Abrams was driving above the speed limit on public streets, that Abrams' Corvette collided into

a Jeep with extreme force, and that Abrams fled the scene of that accident. A reasonable officer

could have easily concluded that Abrams was in the process of evading arrest after fleeing two

crime scenes and seriously injuring as many as three people. In this context, a reasonable officer

on the scene had probable cause to conclude that Abrams posed a threat of serious physical harm

to either the officer or others.

The third *Graham* factor—whether the suspect is actively resisting arrest or attempting to evade arrest by flight—also cuts against Abrams. Although the parties vigorously dispute whether Abrams actively resisted arrest, *see* BACKGROUND, *supra*, there is no question that Abrams by his own admission was running "as fast as [he] could" from the scene of the collision with the Jeep. (Abrams Dep. p. 44.) Such behavior would certainly allow a reasonable officer to conclude that Abrams was actively attempting to evade arrest by flight.

In light of the governmental interests at stake, this Court concludes that the force alleged by Abrams was neither excessive nor objectively unreasonable under the circumstances. At the very moment that the alleged force was applied, Corporal Rose and Officer Beurkel were chasing a suspect who could have been armed, was reasonably viewed as posing an immediate threat of harm to the officers and the public, was involved in severe and violent crimes, and was in the process of evading arrest by flight. Even construing the facts in the light most favorable to the Plaintiff, a reasonable officer could have believed that significant force was required to subdue and arrest such a suspect. *Cf. Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996) ("A police officer may use *deadly* force when the officer has sound reason to believe that a suspect poses a threat of serious physical harm to the officer or others." (emphasis added) (citing *Tennessee v. Garner*, 471 U.S. 1 (1985)).

In sum, "the totality of the circumstances" demonstrates that Abrams' allegations fail to establish that Corporal Rose and Officer Buerkel's use of force violated his constitutional rights. *Jones v. Buchanan*, 323 F.3d 520, 531 (4th Cir. 2003). This "ends the matter, and the offic[ers are] entitled to immunity." *Saucier*, 533 U.S. at 200. Accordingly, this Court grants

Defendants' motion for summary judgment with respect to each of the claims asserted in Count I.

**B.      Plaintiffs' Race Discrimination Claims (Count III).**

Abrams asserts federal claims under 42 U.S.C. §§ 1981 & 1983 by alleging that Officer Buerkel and John Doe 3 violated his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution by discriminating against Abrams on the basis of race in connection with his detention and interrogation.   *See* DISCUSSION, § I, *supra*.  Ultimately, these claims fail because Abrams fails to forecast any evidence that Officer Buerkel or any other individual made decisions involving Abrams' detention or interrogation that were motivated by an intent to discriminate against Abrams on the basis of race.

To succeed in a race discrimination claim under § 1981, a plaintiff must show (1) that he is a member of a racial minority, (2) that the defendant acted with an intent to discriminate against him on the basis of his race and (3) that the defendant's race discrimination concerned one or more of the protected activities enumerated in Section 1981(a).  *See*, *e.g.*, *Brown v. City of Oneonta, N.Y.,* 221 F.3d 329, 339 (2d Cir. 2000); *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996).  Without deciding whether racially motivated detentions and interrogations fall within the ambit of the third prong of a § 1981 claim, Plaintiffs' claims of racial discrimination under § 1981 fail because no reasonable jury could find that Officer Buerkel or any other Baltimore County police officer in this matter was motivated by an intent to discriminate against Abrams on account of his race.

In their motion for summary judgment, Defendants point out that Officer Buerkel's involvement with Abrams was limited to assisting in his arrest on March 4, 2001 and testifying

at his Virginia trial on September 24, 2001.  (*See* Buerkel Dep. pp. 34-45.)  Abrams, who does

not dispute that Officer Buerkel's interactions with him were limited and completely fails to

identify John Doe 3, contends that:

> On or about March 6, 2001, I politely asked a female officer, later
> identified as Officer Robin Buerkel, when I was going to be taken to
> court for a bail hearing.  She responded, "Shut the f-- up you f-- rag
> head.  I am going to make sure you never get bail.  We don't beat up
> women in this country you fu-- Arab."

(Abrams Aff. ¶ 39.)  This Court finds, however, that derogatory remarks standing alone do not

give rise to a claim of race discrimination in the context at issue here.  *Cf. Onuoha v. Grafton*

*School, Inc.*, 182 F. Supp. 2d 473 (D. Md. 2002) (noting in employment context that "to prove

discriminatory animus, the derogatory remark cannot be stray or isolated and unless the remarks

upon which plaintiff relies were related to the employment decision in question, they cannot be

evidence of discrimination.") (citations and internal quotation marks omitted).  Abrams has

forecast no evidence, legal argument, or other support to establish a nexus of any kind between

Officer Buerkel's isolated remark and a decision to detain or interrogate him.  Similarly, Abrams

has forecast no evidence to suggest that any other Baltimore County police officer's decision to

detain or interrogate Abrams was motivated by an intent to discriminate on the basis of race.

Accordingly, Officer Buerkel is entitled to summary judgment with respect to Abrams' federal

claims under § 1981.

Abrams' federal claims under § 1983 fare no better.  Those claims are only viable to the

extent that they are based on a violation of a federal constitutional or statutory right.  *See*

*Lambert v. Williams*, 223 F.3d 257, 260 (4th Cir. 2000) (§ 1983 is not "a source of substantive

rights, but a method for vindicating federal rights elsewhere conferred by those parts of the

United States Constitution and federal statues that it describes."). In this case, however, Abrams

makes no attempt to identify any specific federal constitutional or statutory violation. This

Court, moreover, cannot imagine what federal constitutional or statutory violation Abrams could

possibly raise against Officer Buerkel or John Doe 3. Officer Buerkel did not violate Abrams'

constitutional rights in connection with his arrest. *See* DISCUSSION, § II.A, *supra*. Abrams

agrees that the police had probable cause to arrest him for second degree assault on March 4,

2001. (*See* Abrams Dep. pp. 63-64.) Abrams even pled guilty to that same charge. (*See* Abrams

Aff. ¶ 62.) Defendants have pointed out to this Court that there is no evidence to support any of

the claims asserted by Abrams in Count III of his complaint and Abrams has not responded to

those arguments. (*See* Mot. to Dismiss; Mot. for Summ. J.; Pl's Opp'n.) Accordingly, Officer

Buerkel is entitled to summary judgment with respect to Abrams' federal claims under § 1983.

**C.      Plaintiffs' Claims Based On Probable Cause (Counts V & VII).**

Abrams asserts numerous federal claims under 42 U.S.C. §§ 1981, 1983 & 1985 that

Officer Smith, Sergeant Peters, Officer Buerkel, and John Doe 3 violated his rights under the

First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments by arresting, prosecuting, and

retaliating against him without probable cause. *See* DISCUSSION, § I, *supra*. (*See also* Compl.

Count V, ¶¶ 1-5 & Count VI, ¶¶ 1-5.) Abrams concedes that the police had probable cause to

arrest him on March 4, 2001 for second-degree assault. (*See* Abrams Dep. pp. 63-64; *see also*

Abrams Aff. ¶ 62 (where Abrams admits pleading guilty to second-degree assault).) This Court,

moreover, finds that the record in this case establishes that the police also had probable cause to

arrest Abrams on March 4, 2001 for first-degree assault. *See* BACKGROUND, *supra*.

Accordingly, Officer Smith, Sergeant Peters, Officer Buerkel, and John Doe 3 are entitled to

summary judgment with respect to all claims in Counts V and VII.

> **D.** **Plaintiff's State Law Claims (Counts II, IV, VI, VIII, & IX).**

Abrams asserts numerous state law tort claims against various Defendants. *See*

DISCUSSION, § I, *supra*. Defendants argue that these claims are procedurally barred under

Section 5-304 of the Maryland Local Government Tort Claims Act ("LGTCA") because Abrams

failed to give prior notice of his claims to Baltimore County.   (*See*, *e.g.*, Mot. to Dismiss, p. 8.)

Section 5-304 provides in relevant part:

> (a)   *Notice required.*   Except as provided in subsection (c) of this
> section, an action for unliquidated damages may not be brought
> against a local government or its employees unless the notice of the
> claim required by this section is given within 180 days after the
> injury.
>
> (a)    *Manner of giving notice*. . . (2)   In Anne Arundel County,
> Baltimore County, Harford County, and Prince George's County, the
> notice shall be given in person or by certified mail, return receipt
> requested, bearing a postmark from the United States Postal Service,
> by the claimant or the representative of the claimant, to the county
> solicitor or county attorney.   (3) The notice shall be in writing and
> shall state the time, place, and cause of the injury.
>
> (c)    *Waiver of notice requirement.*   Notwithstanding the other
> provisions of this section, unless the defendant can affirmatively
> show that its defense has been prejudiced by lack of required notice,
> upon motion and for good cause shown the court may entertain the
> suit even though the required notice was not given.

Md. Code Ann., Cts. & Jud. Proc., § 5-304.  The LGTCA defines "local government" to include

counties and boards of county commissioners.  Md. Code Ann., Cts. & Jud. Proc., § 5-301(d)(1)-

(3).  "Employee" is defined to include "(i) [a]ny employee, either within or without a classified

service or merit system; [or] (ii) [a]n appointed or elected official. . . ."  *Id*. at § 5-301(c)(2).  As

a result, the LGTCA notice requirements apply to each of Abrams' state tort law claims against

Baltimore County,  law enforcement officers employed by Baltimore County (*e.g.*, Corporal

Rose, Officer Buerkel, Officer Smith, Sergeant Peters), and Baltimore County officials who are

either appointed or elected (*e.g.*, Superintendent of Baltimore County Police).

Despite considerable opportunity, Abrams has neither argued that he gave adequate

notice under the LGTCA nor moved this Court to entertain his state law claims even though the

required notice was not given.  As a result, this Court finds that each of Abrams' state law tort

claims is procedurally barred as a matter of law under § 5-304 of the LGTCA and will enter

summary judgment against Abrams and for Defendants with respect to all claims in Counts II,

IV, VI, VIII, and IX.  *See*, *e.g.*, *Rios v. Montgomery Co.*, 872 A.2d 1, 14 (Md. 2005) ("We have

expressly held that the LGTCA notice requirements are a condition precedent to maintaining an

action against a local government or its employees to the extent otherwise not entitled to

immunity under the LGTCA."); *Chappelle v. McCarter*, 873 A.2d 458, 462 (Md. Ct. Spec. App.

2005) ("[T]he notice requirement that applies to any action for unliquidated damages against an

employee is not limited to actions in which the employee was acting within the scope of

employment."); *Thomas v. City of Annapolis*, 688 A.2d 448, 456 (Md. Ct. Spec. App. 1997) (the

notice provision of the LGTCA "applies to all torts without distinction, including intentional and

constitutional torts.").[8]

---

[8]     Maryland courts routinely apply the LGTCA notice requirements to the type of
torts asserted by Abrams in this case.  *See*, *e.g.*,  *Chappelle v. McCarter*, 873 A.2d 458 (Md. Ct.
Spec. App. 2005) (applying LGTCA notice requirement to claims of false imprisonment,
intentional infliction of emotional distress, invasion of privacy, and violations of state
constitutional due process under Article 24 of the Maryland Declaration of Rights); *White v.
Prince George's County*, 877 A.2d 1129 (Md. Ct. Spec. App. 2005) (applying LGTCA notice
requirement to claims of battery, the use of excessive force by the police, and alleged violations

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is GRANTED.

A separate Order and Judgment follows.


Dated: February 27, 2006                    /s/
                                            Richard D. Bennett
                                            United States District Judge

---

of civil and constitutional rights); *Heron v. Strader*, 761 A.2d 56 (Md. 2000) (applying LGTCA notice requirement to claims of malicious prosecution, false arrest, and false imprisonment).